### THE FERGUSON.

(Circuit Court of Appeals, Second Circuit. April 4, 1907.)

#### No. 218.

TOWAGE—TOWING SHIP FROM DRY DOCK—COLLISION WITH DOCK.

Evidence considered, and held to establish the contention of a libelant that a collision between a steamship and a dry dock from which the ship was being towed by a tug was due to the fault of the tug in hauling the stern too far to port and against the side of the dock, because of a miscalculation of the effect of a high wind blowing from that side.

Appeal from the District Court of the United States for the Eastern District of New York.

C. S. Haight, Clarence Bishop Smith, and Wheeler, Cortis & Haight, for appellant.

C. C. Burlingham and Wing, Putnam & Burlingham, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The judge who heard and saw the witnesses in this cause has indicated in his opinion with characteristic frankness that the question of liability was an open one in view of the unsatisfactory, contradictory, and inconclusive character of the testimony. He says:

"The result of a careful consideration is that the evidence does not show with preponderating clearness that the master of the tug did miscalculate the force of the wind and haul his tug too far and forcibly to the westward and thereby produce the accident. A too free slacking of the port bow lines at an earlier stage of the removal would produce the same result."

In these circumstances, we have felt constrained to review all the evidence independently of the conclusions reached by the court below.

The situation presented was one where, while a steamship was being hauled out of a dry dock by a tug, she swung over in the teeth of a heavy opposing wind until her port quarter collided with the port side of the dock. The only explanation vouchsafed by the claimant on behalf of the tug was that the port bow lines on the steamship, which are usually kept taut in such circumstances during the operation of hauling out, were on this occasion slacked or cast off, with the result that the bow swung to starboard and caused the stern to swing to port and strike the dock.

There are various persuasive answers to this contention, namely:

1. There were two port bow lines out. Two witnesses testified to the slacking of one port bow line. One of them, as the court below says, "testifies that the port bow line was slacked so as to let the bow go to starboard, but he did not see the port side of the vessel go to port sufficiently to collide with the dock, and seems to admit that the slacking of the line could not have caused the collision. His evidence strengthens the existing uncertainty by adding features to the happening peculiar to his own observation." The other witness saw only one port bow line out and only one port bow line slacked.

2. The evidence is to the effect that, where there are two lines, both are not ordinarily slacked at the same time, but that it is customary to hold on to one line while the other is eased. There is some evidence that this custom was followed on this occasion. Claimant's witness Devereaux testifies that, when they let go the port bow line, her bow was then about 50 feet in the dock; that he thought one of the bow lines was taken in just after she floated and started out, then they worked the forward bow line, which was the only bow line out, down the dock; that he would not swear that, when he saw line X loosed off and signaled to stop, the tug that line Y was not in place, but that, if it was there, there was no strain on it at the time because all the strain was on line X, that was the line that held the ship. He further testified that it was customary to carry one line down the dock and make that fast, and then take the line farthest forward and lead that down and make that fast, and so work the ship out; that the tug stopped immediately upon signal from him; that the stern of the steamship was 350 feet out of the dock when that happened; that he stopped her there because he saw her coming over against the other part of the dock, the starboard side of the dry dock, and because the towboat pulling on the quarter would swing her bow harder against the dock; and

that when he ordered the boat to stop when she was all out but 50 feet, because they were slacking off the port bow line, that line had been made fast on the end of the dock or pretty near it.

3. With the heavy wind blowing broadside against the port side of the steamship, it would seem that any slacking of the port bow line which would have been sufficient to swing the stern against the dock would have caused the bow to swing so far to starboard as to collide with the starboard side of the dock or come close to it. The bow did not strike the dock, and all the witnesses agree that the swing of the bow to starboard was a very slight one. We do not agree with the statement of the witnesses that the letting go of the port bow lines would cause the stern to swing to port as on a pivot if the tug was hauling the steamship straight out or nearly so. But, even if this theory be accepted, the fact that the bow did not swing further over toward or against the dock indicates that no such slacking occurred.

4. If, on the other hand, the master of the tug miscalculated the force of the wind and hauled the stern at an angle too far to port, the accident would have occurred exactly as it did. Rodan, the master of the tug, testified that if the port bow line had been held perfectly tight, and he had pulled in the direction of the solid line (a line angling to port) at the stern, he would have pulled the whole ship right out against the side of the dock; that the tendency of the wind was to swing the whole ship bodily over toward the starboard side of the dock; that it would not tend to swing the stern in more than the bow, if she was properly taken care of; and that, if she was there without any ropes on, the whole ship would have to swing evenly to starboard under the influence of the wind blowing so hard. He further testified that the stern of the steamer did swing over to the left; that she fell back again afterwards to the right, and went back in the middle of the dock again because the wind shoved her right off. That the accident was caused by the fault of the tug in hauling the stern of the steamship too far to port is further indicated by the evidence that the tug started out at full speed, and at an angle to the dock, in order to overcome the heavy wind.

We conclude, for the reasons stated above, that the evidence conclusively shows that the slacking of the bow line alone could not have caused the collision, and, in view of the other evidence discussed, we are of the opinion that the negligence of the tug was the sole cause of the collision.

The decree is reversed, with costs, and the cause is remanded to the court below, with instructions to enter a decree in accordance with this opinion.